Cases number 22-1432 and 22-1433, USA v. Gregory Rogers. Arguments not to exceed 15 minutes per side. Mr. Beach, you may now proceed for the appellate. May it please the court, Jake Beach for appellant Gregory Rogers. I'd like to request three minutes for rebuttal. Certainly. Thank you. We've had some changes of late. Do you want to begin with that or do you have something else? Yes, your honor. With this concession about withdrawing the argument to permission, we believe the government has forfeited any of its remaining arguments. It was the primary argument on appeal. The overture it makes at the end of the letter is just not fully developed. So we view this issue as forfeited. But why would they forfeit something that they didn't bear the burden of proof on? Your client has to establish standing, right? Yes. So he has to establish a legitimate expectation of privacy at the time of the search, right? Yes, your honor. It's still true that he disclaimed ownership of the car when the police approached him, right? Yes. He was in the passenger seat. So why does it matter whether the girlfriend later said he had permission to use it? Well, because this is an objective analysis, it's not state of mind evidence. He showed that he had lawful possession and control of the vehicle based on the record evidence. Well, did he show that he had a legitimate expectation of privacy at the time of the search? Yes, your honor. That is our position based on his lawful possession and control. I guess I'm not fully convinced. I mean, maybe the government will concede it, I don't know. But I don't know that they've conceded the issue. They've said they, okay, so she came into the police station a day later that day and said he did have permission. But as far as the police were concerned, he didn't, right? At the time that they conducted the search? No, your honor. That is not in the record and also the police's state of mind evidence is not relevant to the standing analysis. But it's whatever the objective evidence was at the time of the search, isn't it? Not for the standing analysis. That would be relevant to the reasonableness of the search, but not... What's the case that talks about the standing, give me some case law on this issue about the time of the search that I can look at the permission that somebody said they had later on. Well, I mean, I believe Snoddy goes into the arguments raised objectively about the situation as opposed to what was told to the officer. What about October where the woman said, oh, that's not my luggage, that's not my luggage, and then so they search it and it turns out it was her luggage, right? Right, your honor. So she would have had standing, right? I mean, she should have because it was her luggage, but she had disclaimed that it was her luggage. So why doesn't that kind of undercut your argument? Right, and the two cases that are relevant to standing in terms of disassociating from the vehicle would be the Eckhart and Daniels cases. And in those cases, the defendant disassociated on the spot and then never followed up with evidence about the relationship to the lawful owner. And oftentimes, they were in a different state, completely unrelated. Here, Rogers told the officers on the spot, this is my girlfriend's car, she is right up the street, and after the fact, Satya went to the police and said he had permission to use the car. And the reason, your honor, we talk about the- Testify at the hearing? No, your honor, but that's not the requirement. The Ninth Circuit addressed this in Garner that direct evidence is not the standard. And our argument on appeal is that the record evidence, even pre-trial record evidence, shows there was lawful possession and control. And this letter filed yesterday shows a report where Satya herself concedes that, states that, and the government has now withdrawn its argument. But was that evidence at the hearing? Did the district judge have that evidence in front of her? It was part of the motion to suppress filing. It was the police officer's report, right? Yes, it was an officer that didn't testify. It was a third-party officer not relevant to the search. So at the district court suppression hearing, there was a second issue about a cell phone warrant and the government stipulated that away at the beginning of the hearing. It was not reached. And it's within that report for Officer Lukowski, who was not present at the January 20th search, that was where this Satya's conference with the police was put in the record. And so it was not discussed at the district court hearing because it was stipulated away as irrelevant. Was it argued in the briefing? Yes, the trial counsel raised in the reply brief that he did have permission and he had attached to this report, even though it was related to the cell phone issue. In light of that, does it matter, does the possession of the keys and the place where he was sitting matter? In the car? The place he was sitting in the car as a passenger? No, Your Honor. We don't believe the fact that he was sitting in the passenger seat is controlling here. In terms of raucous, where it says a passenger does not have standing, that was specifically what the Supreme Court called a passenger qual passenger, as in there was literally a driver. That driver had possession and control of the vehicle. Someone sitting in the back seat or even in the passenger seat where the driver is present, they don't have control. That's different here where he had possession of the keys and he could exclude third parties such as a carjacker, and that's the test under Byrd. And as for his status as a passenger, the Supreme Court in Byrd explicitly said, raucous does not state that a passenger cannot have standing in someone else's vehicle. And it said the court specifically declaimed any intent to hold that a passenger cannot challenge the search of a vehicle unless he happens to own or have a possessory interest in it. So where does that leave you? Doesn't it leave you with the next two steps in your analysis? You've got impoundment and you've got proper inventory, right? Yes, Your Honor. So what are your core arguments on those? Yes, our core argument on the impoundment not being proper is that this court held in U.S. v. Morgan that a community caretaking action is only reasonable when the scope of the intrusion matches the function of the caretaking activity. Officer Naraki's impoundment does not meet this standard because there's a myriad of less intrusive alternatives that were better suited to serve his own stated motivations. And there was no present location-based concern regarding the vehicle either. In U.S. v. Morgan, Chief Judge Sutton synthesized the developments of the community caretaking case law after Coniglia in that his relevant holdings were that it does apply to vehicles, it is all community caretaking actions, which in his opinion he said he implicitly treated inventory searches as a community caretaking action, and he said all of these actions have a reasonableness restriction, which is that the intrusion must reasonably match the problem at hand. When you look at the impoundment scenario, this court and the Supreme Court have recognized three situations where impoundment is proper. A vehicle is impeding traffic, otherwise threatening public safety or convenience, or presenting liability concerns to the city or damage to the property. The first two are not present here. It was not impeding traffic or threatening a safety concern or public convenience. The third is what Officer Naraki invoked, that he was looking out for the city and looking out for Saisha. Taking that at face value, as the court did in Morgan, the officer's justifications, there was a myriad of less intrusive alternatives, even blessed by the policy, that were equally applicable as C1E, which Officer Naraki relied on. Of the five potentially applicable policies, he picked the only one that resulted in impoundment. Under the logic of Morgan, this court should not find that a reasonable application of community caretaking activity. What about the inventory? Well, Your Honor, so the reasonableness restriction applies on top of the inventory case law, so that's the first step, but then when you go to the next one, the government's response is that it's standardized criteria alone. That cannot be true when a reasonableness restriction applies. As for the policy he relied on, he invoked the goals of the policy, which again takes us back to whether that's even reasonable, the route he chose based on his own motivations. The second thrust of our argument here today is that the district court erred by overlooking key evidence of Officer Naraki's investigatory motive. There, Officer Naraki testified that he did not call the tow truck before beginning the search because he wanted to wait on forensics. It took forensics 15 minutes to get to the scene, an hour to do its process, and he didn't want to waste the tow truck driver's time. How relevant is the motive in light of Snoddy? I mean that guy, it's clear he wanted to search the car, right? I mean he says, I'm going to search the car, by the way, I'm going to get to do this whether you agree or not, why don't you just agree? I mean, even in that case we said, it doesn't even matter if it was whatever subjective motivation was, it was objectively reasonable, the policy said you can do it, why doesn't that just take care of that argument? Right, Your Honor. It is true that if an impoundment is objectively justifiable, you don't look to the subjective intent of the officer. However, our argument is here that it was not objectively justifiable based on the district court's rationale, and in any event, the policy does not apply on all fours. That's an important part, when the officer begins to exercise discretion, motive does become relevant. And here, he... Can you point me to a case that supports that? It's the logic of Snoddy. If you're saying that we don't look... So that's a no. I mean, have we said that? I mean, I don't want to be flip about it, but what do we have? Snoddy seems pretty clear, so what do we have? I mean, I agree with you, the policy isn't an on all fours fit, but it's pretty close. Are you saying that, well, if it's not on all fours, there has to be good faith on the part of the officer, and this is kind of bad faith? Just trying to figure out how to reconcile all of it. Yes. We're saying that the inventory case law says that as long as there is standardized criteria, reasonably constrained discretion, and not executed for pretextual motives. So in the baseline of the inventory test, pretext is relevant. We have come along and said, well, we don't get there if it's objectively justifiable. That doesn't apply here, for the reasons we've outlined in our brief. We've also said that it's objectively justifiable when the policy is on all fours. That does not apply here either. So the situations where we have given this sort of first step threshold, I see I'm running out of time. May I finish this answer? Certainly. Thank you. In those cases where we've said the threshold question about objective justifiability, etc., that's not the situation here, where the policy didn't apply, and he did exercise discretion, choosing the most intrusive option. Thank you. Good afternoon, your honors, and may it please the court. Stephanie Carolin on behalf of the United States. As Judge Stranz quite rightly pointed out, we have had a couple of developments in the last 24 hours. I did want to just address that briefly with the court. We did concede in a letter that we had filed with the court, there was evidence of permission in the record that was the attachment. Why didn't you file it like a week ago, or two weeks ago, or a month ago, or like in time that I could have looked at it closely? That is a completely fair question, your honor. In all candor with the court, a lot of the preparation happened at the last minute, and when we found that in the record as part of our preparation, we wanted to make sure we were disclosing that to the court as early as possible. It certainly wasn't as early as we perhaps could have, and I apologize for that, but we did want to at least make sure that the court had it. I would say, though, that conceding the issue of permission doesn't necessarily, as you pointed out in the inquiry, it's not the government's burden to establish that a defendant has a reasonable expectation of privacy, and in this particular case, the district court, in its opinion, actually even cited, even if the court were to infer from the circumstances, that the defendant had permission to possess or occupy the vehicle, and then went on to find, as the district court did, and that's in large part because of Mr. Rogers' behavior on scene. As your honor pointed out, he is saying to the officers there, immediately, it's my girlfriend's car. First thing he says, it's my girlfriend's car, and he repeats that multiple times. He says, my girlfriend's just down the street. She parked the car here. He can't tell the officers exactly where his girlfriend is, but he does say that several times. Are you taking back your concession? It seems to me that the record shows that he had permission to be in that car, and that he exercised that permission often, and in that situation, he had the keys with him, right? Why isn't that the power to exclude? I think that's all fair, your honor, and no, we're not taking back our concession. I was just pointing out that there is, to some extent, an abandonment argument that is proper here, given what Mr. Rogers said to the officers on scene. Judge Nalbandian quite rightly pointed out the Tolbert case, which I think is instructive from the circuit. I would also point out United States v. Barnes. That's a Tenth Circuit case, 5F Appendix 809 from 2001. All for that proposition, but the real issues, your honor, here is the impound of the vehicle, and the inventory search that was properly conducted by Officer Naraki as part of this. As your honors are well aware, each step in that process has to be most lawful, and subject to standardized criteria. What in the policy gave a description or an explanation of how to take an inventory search? Looking at the policy specifically, your honor, getting to the inventories, which I believe starts at Part D, which is page ID 84. It does talk about going through and saying, this is what the officer is supposed to do. It's supposed to fill out the form, as Officer Naraki did in this particular case. When did Officer Naraki fill out that form? I believe the same day that the inventory search was performed. He didn't fill it out on scene, but it was filled out as part of his responsibility. It was admitted before the district court and outlined several things of value that were found during the inventory search. Because that's a key point, is that Officer Naraki, even after finding the loaded gun and the marijuana, goes back after forensics is done, and continues his inventory search. Goes into the trunk of the car, looks at those things, and then catalogs them in his written report, as he's required to under the policy, indicating this was in fact an inventory search that he was performing, and not a pretextual search, as Mr. Rogers has argued. To answer some of the questions that you had posed earlier, there is discretion. Just because there has to be a standardized criteria, doesn't mean that there's no discretion given to officers in this case. That's the Kimes case, it's also Snotty, as your Honor pointed out. I would also point out in Hockenberry, that the court said the law does allow for some flexibility and practical judgment in how searches are carried out. Specifically saying, the question is not whether the policy was complied with to a T. And in this particular case, there was a policy in place, the district court found that there was a reasonable interpretation of that policy by Officer Naraki, in how he conducted both the impound and the inventory search. Let me ask you about that. When I look at the dash cam video, I've kind of listed the things that I see that seem to me to speak to investigation. And the wording of the officers actually at that location that indicates an investigatory interest in Rogers from the start. He searched the car as soon as Rogers was in custody without checking the department's policy. He began the search by looking under the passenger seat and searched mostly under the seats and crevices while ignoring the objects that were sitting on the seats within the car. He didn't have an inventory book and didn't take notes. He had not yet called or discussed calling a tow truck to impound the car. He admitted contemporaneously that he was conducting an investigatory, not an inventory search. It just seems to me that even at that point, his response was that it was a wingspan search. I'm not even sure what that is. And it was not until afterwards that he called it an inventory search. This just seems to me to speak of what the Supreme Court in Florida v. Wells calls general rummaging. Why don't you fit in that category in this case? Well, I think there are a number of reasons that we don't fit in that category. First of all, the government acknowledges Officer Naraki's statement about conducting a cursory wingspan search. But that was also explained to the district court and the district court ultimately credited Officer Naraki's testimony on that particular point. That he was wrong? That he was wrong? That's not crediting him with, you were right, it was okay to do it that way. That was admitting his concession. That he said he was doing something that he couldn't do. Right? Yes, Your Honor, but I believe that the district court goes further and actually finds all of Officer Naraki's testimony to be credible including the fact that he put contemporaneously in his report that was drafted that same day that he was conducting an inventory search. This wasn't something that he justified months later simply at the suppression hearing. It was after the fact. Well, I mean, his statement with the wingspan search also occurred after the fact, I believe, after the fact that they found the marijuana and the loaded gun. It's unfortunate as a statement but I believe the officer credibly acknowledged the mistake and acknowledged what he was really doing and that was credited by the district court. I would also point out, it's not that far afield from Snotty where the officers were clearly trying to get in that car. They were very up front. You know, we're going to search this. We're going to get in here. Why don't you consent? Why don't you consent? Why don't you consent? I think said it something like two or three times. And nevertheless, the court upheld that particular impound and inventory search because the actions of the officers were objectively justifiable on the scene and that I think is... Let me understand why they were objectively appropriate in this case. What was it that you say made the decision to impound the car appropriate? I think there are a number of things. I think first, starting with the policy itself. Again, I think everybody acknowledges that the policy is not 100% on all fours. I don't think that's required under the case law but the policy certainly does talk about what to do with the vehicle if the driver and only occupant is arrested. It requires impound at that point. I think the district court correctly found that that was a reasonable interpretation for Officer Naraki to cite that particular provision but it goes further than that because there's also a provision that Officer Naraki testified to that he understood meant he could not leave the vehicle there. That in order to leave the vehicle there... Yes, your honor. If your honor looks on page ID 83, this is part 2 subparagraph C, as an alternative to vehicle impoundment officers may leave the vehicle parked and secured at the scene if none of the impoundment criteria are met and the owner requests it and will take full responsibility for it. Officer Naraki specifically testified about that particular provision. He testified that his interpretation of that, which was credited by the district court, was that he couldn't leave the car on scene. What about A? While on scene approval from the owner allow a responsible person who possesses a valid license to come and get the car or B, summon a person of the owner's choice to come to the scene. I understand there's a question about ownership but we know that he had permission and I'm struggling. There's a good bit in the opinion about well, it would be a problem for it to be left on the street. It would be a hazard but I looked at the video. It was in a line of parked cars. It wasn't a singular car parked on the side of the road that might be in the way of emergency equipment or a snow shovel or... It was in the line of other people who were legally parked at that location. I understand that but going back to your honor's citing of the policy, all of those provisions do require permission of the owner. The owner in this case is not Greg Rogers. It's Kiesha Cross and we know that because Officer Naraki went and confirmed that in his in-car computer system as part of his investigation in this case. The fact of the matter is the owner was never on scene. At no time did she show up during at any point in this particular investigation did she come to the scene to try to assert her ownership, to say you can leave the keys with him and he can pick the car up later any of those things. At no time did that happen. At no time did Mr. Rogers ask hey, can you call Ms. Cross? Here's the number. In fact, he says can you call my mom? That was his concern. Can you call my mother to come take my stuff? But you don't have the owner on scene and for that reason Officer Naraki interpreted I think that provision of the policy 2C to mean that he couldn't leave the vehicle there without running afoul of the policy. And that was reasonable as an interpretation and it certainly wasn't clearly erroneous which is the standard we have here on appeal. Does it matter that the decision to actually call an impoundment vehicle did not come until after what he conceded was an investigatory search was completed? I don't believe so. And the reason I don't believe so is I think you have to look at the sequence of events and the timing of that. I think it's actually Rogers' brief itself that points out that the initial search that led to the discovery of the gun and the marijuana took approximately a minute. So at that point he knew he had to go through the forensic process given what he had found. It was only a minute into the inventory search and I don't think it's unreasonable for an officer to sort of try to get the lay of the land. What am I dealing with? How long is it going to take me to assess this before I do call a tow truck and have that person come to the scene and have to sit there while I'm cataloging a lot of different stereo equipment for example or other things of value. But he wouldn't have been in that situation since he didn't even get the form and undertake completion of the form until after it was already gone, right? Well I think that's not something that's unusual in my experience and I would just point this out to the court. I have seen situations where officers have gone back using their body camera later to fill out that form because it does say they're cataloging it on the form later by listening to their body camera and using that as a point of reference rather than trying to fill out a form while standing on the street in the cold while trying to manage a very fluid situation. So for all of those reasons from the government's perspective the inventory and impound decisions made by Officer Naraki were proper. The district court found that and those findings are not clearly erroneous. So from that perspective I think we move on from that. The other thing I wanted to address with the court was the April guns and drugs. Rogers raises for the first time on appeal that those two should be suppressed. That is something the court should look at under plain error review because it was raised for the first time on appeal. At no time in any of the written filings or arguments did Rogers argue below, hey, you should also suppress the stuff that happened three months later. And the reason is because the case law doesn't support suppressing something in that particular instance. The key cases in that are the Baker case from the 6th Circuit which cites an 8th Circuit case tightloff for those particular provisions. To say that the exclusionary rule which is an incredibly harsh penalty as is acknowledged routinely should be applied to separate officers who effectuated a valid federal arrest warrant three months later and then found Mr. Rogers with guns and with drugs again. To say that that should be suppressed is far too attenuated for that to be the decision in this particular case. They wouldn't have been doing it but for the January stuff, right? Correct, your honor. It is but for, I guess. You're saying it's got to be proximate as opposed to but for causation. I mean there are a number of factors that the court has outlined in looking at attenuation in particular and then also the application of good faith and that comes primarily from Brown vs. Illinois where it talks about the time, the temporal proximity, which I think in this case is nearest to the government's benefit it was three months later. How would the, and I know your time has run out, but how would the April, would it change, let's say January was out but April was in would it change the charges that were brought? What would have to happen? If April is in and January is out certainly that is the evidence underlying the January charges so those three charges would be I think very difficult to prove without the evidence from the search but I think the April charges could go forward with no problem. But does it affect, presumably it does or does it affect his sentence? It does. It would affect his sentence. Are there any other questions, your honor? No, thank you. Thank you very much.  Your honors, I just have three quick points on rebuttal. First, Judge Nobandian, to your question about the objective evidence case law look at Byrd vs. United States. In that situation the police knew that the defendant was not the lawful lessor, was not on the contract, he did not speak to the police, and yet the analysis after the fact looked at the objective facts of the situation to conclude that he did have standing despite the police's state of mind evidence. Second, turning to the question of pretext, yes it's true that the district, as Judge Fransch pointed out, yes the district court credited that he was not admitting to do something illegal on the spot. Even with that fact taken out, there was at least seven or eight other key pieces of evidence of pretext that the district court did not even address and that were raised by trial counsel. So for example, on this point about forensics, he said he didn't call the tow truck because he was waiting on forensics. You only call forensics if there's admissible evidence. And his body camera showed that he didn't call forensics until he found the gun and drugs. So at best, his explanation for... What's the paradigm though? How does this, I'm going to go back to this because I guess I blame myself, but what if there's a policy, you execute the policy to a T, that's like everything's okay. Once I don't fall into that world, then we're just looking to see whether you acted in bad faith or not. Or acted not in bad faith, but acted in an investigatory manner as opposed to a community care taking way. Yes, your honor. I believe that's a correct reading of Snotty, that if they begin to exercise discretion, then you have to make sure they're not exercising that discretion in furtherance of an investigatory manner. So step one would be whether I...the existence of a policy takes all of that other stuff off the table, right? So if I have a policy and I executed it or acted pursuant to it, I've kind of insulated myself from this question about my motivation. What happens if you have a policy and I mean I guess at the margin we're saying because there wasn't an exact fit on the impoundment they don't get to take advantage of the safe harbor? Well, they can take advantage of the safe harbor if there's not compelling evidence of pretext. So you would look at on what basis to exercise that discretion. But are you saying that regardless of the policy and how I carried it out, if I have strong enough evidence of pretext I could override that there would be no safe harbor? Because I read Snotty to say that can't be right. I see I ran out of time. May I answer this, Your Honor? No, Your Honor. So it's not regardless how you carry it out. Because if you carry it out strictly to how the policy applies, then you're within the safe harbor of the inventory search case law because you have acted under standardized criteria that constrains your discretion. You don't look at subjective intent in that case. However, when your decision is not on all fours with the policy then you do look at what motivated the discretion. And in most cases when they're exercising reasonable discretion there won't be overwhelming evidence of pretext. For example in Snotty, you know, his only, he just said that the officer was asking to search ahead of time. That was, you know, it's good evidence but it pales in comparison to the mountain of evidence of pretext here, most of which Judge Schranch listed out to the government. The last thing Your Honor, Judge Nobrandian, on your question about the excluded January evidence, how that affects April, they did rely on the January evidence at trial to establish a pattern of behavior to show that he was a drug dealer so that would affect the April conviction as well. For these reasons, we ask that you reverse the denial of the motion to suppress, vacate the judgment that counts 1-6, and remand for further proceedings. Thank you. We thank you both for your work on this case, both your briefing, your updates, and your argument here today. The case will be taken under advisement and an opinion issued in due course.